IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN J. MANLEY d/b/a CHICAGO MARINE TOWING, | )<br>)<br>) |
| Plaintiff, | ) CASE NO.: 13-CV-5551<br>)<br>) Judge Robert M. Dow, Jr. |
| v. | )<br>) |
| BOAT/U.S. INC., ET AL., | )<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two motions to dismiss [12 and 15] filed by Defendants Boat/U.S., Inc., Great Lake Repair, Inc. d/b/a Great Lakes Towing & Repair, and Richard N. Lenardson. For the reasons set forth below, the Court denies Defendant Boat/U.S. Inc.'s motion to dismiss [12] and denies the Great Lake Defendants' motion to dismiss [15].[1] This case is set for further status hearing on 5/6/2014 at 9:00 a.m.; the parties are directed to meet and confer and to file a joint status report with a proposed discovery plan no later than 5/2/2014.

**I.  Background**[2]

Plaintiff John J. Manley d/b/a Chicago Marine Towing ("Chicago Marine") is an Illinois corporation located in Chicago, Illinois, which provides marine towing and salvage services on Lake Michigan and its tributary waters. Boat/U.S., Inc. ("Boat U.S.") is a Virginia corporation

---

[1]  In their motion to dismiss, the Great Lakes Defendants do not offer any original arguments but merely "join and herein incorporate by reference all arguments and positions as to Counts III and IV" from Boat U.S.'s motion to dismiss.

[2]  For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaints. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, all citations in this section correspond to Plaintiff's complaint [1].

that provides water towing services, 24-hour dispatch service, and insurance coverage for recreational boaters. Defendant Richard Lenardson is the owner of Defendant Great Lakes Towing; both are citizens of Michigan. Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

On or about February 5, 2009, Chicago Marine entered into a service agreement with Boat U.S. Pursuant to the agreement, Chicago Marine was a Boat U.S.-authorized marine towing company, with a protected area of exclusive operation in and around certain specified ports on Lake Michigan. The agreement provided that it would remain in effect until November 30, 2013, and that it could only be terminated by Boat U.S. prior to November 30, 2013, by written notice of proposed termination in the event that Chicago Marine breached Section I, Items 3, 4, 9, 10, or 11 of the agreement.

On July 1, 2012, Boat U.S.'s Towing Dispatch Service called Chicago Marine and dispatched Chicago Marine to assist a non-member boater, Nathan Locher ("Locher"), whose powerboat had run aground on shore in a navigable waterway located at or near Wells Beach, Indiana. Albert Bartkus ("Bartkus"), one of Chicago Marine's employees at that time, was dispatched to assist Locher. When Bartkus arrived, Locher and a woman were still on board the grounded vessel. Bartkus advised Locher that this was a salvage operation and that for safety reasons he and his girlfriend would have to disembark from the boat before it was pulled off the shore. Locher signed the salvage contract and went ashore. Chicago Marine towed the Locher vessel to a boatyard.

Shortly thereafter John Manley arrived at the site to transport Locher and the woman either to the boatyard or their home. According to the complaint, Locher and the woman were

belligerent, impaired by drugs and alcohol, and refused to comply with his directives. Eventually Manley drew a handgun and ordered the couple to sit on the transom of the boat and to stay sitting there until the vessel reached shore. He advised the couple that he would not take them to the boatyard, but instead would do so the following morning after they "came down" from the drugs and alcohol, and that they could make arrangements at that time to remove any personal belongings from the boat. Manley dropped the couple off at Locher's home port without further incident.

The following morning, on July 2, 2012, a Chicago Marine employee contacted Locher, informed him again that his boat was located at Crowley's, and made arrangements for Locher to go and remove any personal belongings from the boat. Manley also made arrangements for two police officers to be present at the boatyard to ensure that Locher caused no problems. By 3 p.m. on July 2, 2012, Locher had removed his personal belongings from the boat and left the boatyard without incident. Locher regained possession of his boat from Chicago Marine on August 2, 2012.

After the events of July 1, 2012, Boat U.S. informed Manley that it had received complaints from both Locher and his insurer, American Family Insurance, about Chicago Marine's services and billings, including Manley's pointing of a handgun at Locher. Manley told Boat U.S. about the salvage operation and why Manley believed his actions were reasonable and necessary under the circumstances. On July 23, 2012, Boat U.S. delivered to Chicago Marine a letter terminating the service agreement. In the termination letter, Boat U.S. informed Chicago Marine that it was terminating the agreement, effective July 23, 2012 at 12:00 p.m., due to Chicago Marine's purported breaches of Section I, Items 2, 10, 11 and Section II, Item 1 of the service agreement.

3

The complaint alleges on information and belief that after Boat U.S. terminated the agreement, Boat U.S. contracted with Great Lakes Towing and its president, Lenardson, to perform towing and salvage operations for certain of the port areas that previously were Chicago Marine's exclusive areas under the service agreement. Subsequently, Boat U.S. was an exhibitor at the Chicago Boat Sports & RV Show (the "Chicago Boat Show") on January 9, 2013 to January 13, 2013 at McCormick Place in Chicago, and it paid for and maintained a booth at which its representatives promoted Boat U.S.'s services and products. Lenardson was one of the Boat U.S. representatives who manned the Boat U.S. booth at the Chicago Boat Show. According to the complaint, Lenardson wore a hat and shirt with Boat U.S.'s logo while he was manning the booth.

On or about January 13, 2013, Keith Pearson, who works for Chicago Marine as a subcontractor, attended the trade show. Pearson allegedly spoke to Lenardson while he was manning the Boat U.S. booth. Pearson identified himself as a salvage diving subcontractor who worked for Chicago Marine and told Lenardson that he was interested in working for Boat U.S. The complaint alleges that Lenardson responded to Pearson by making false statements about Chicago Marine, including that Manley had gone bankrupt and that Manley's Coast Guard license had been revoked. The complaint further alleges that Lenardson made these same types of statements on or about May 18, 2013, to officers at the United States Coast Guard stations in St. Joseph, Michigan and in Michigan City, Indiana.

On August 2, 2013, Plaintiff filed a five-count complaint against Defendants alleging breach of contract for wrongful termination against Boat U.S. (Count I), breach of implied covenant of good faith and fair dealing against Boat U.S. (Count II), intentional interference with prospective economic advantage against Boat U.S. and the Great Lakes Defendants (Count III),

defamation *per se* against Boat U.S. and the Great Lakes Defendants (Count IV), and defamation *per quod* against Boat U.S. and the Great Lakes Defendants (Count V). Defendant Boat U.S. moves to dismiss Counts II, III, and V, and the Great Lake Defendants move to dismiss Counts III and V.

## II.     Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in its favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir.

2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

**III. Analysis**

    **A.    Choice of Law**

In its motion to dismiss, Boat U.S. contends that Count II fails to state a claim and must be dismissed because a cause of action for breach of the implied covenant of good faith and fair dealing does not exist under Illinois law. See, *e.g.*, *ABS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) ("we need not belabor this issue since the Illinois Supreme Court has recently resolved it * * * breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.") (citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 131 (Ill. 2001) (the covenant of good faith and fair dealing is a rule of construction, not an independent source of tort liability). In response, Plaintiff points out that its agreement with Boat U.S., which is attached to the complaint, contains a choice-of-law provision stating that Virginia law, not Illinois law, applies in determining the parties' rights and obligations under the agreement.

As Plaintiff points out, Boat U.S.'s service agreement contains a choice-of-law provision stating that "[t]his Agreement shall be governed by the laws of the Commonwealth of Virginia, excluding the conflict principles thereof." See Compl., Ex. A, ¶ 17(e). Because the Court has jurisdiction based on diversity, it applies the conflict of laws principles of Illinois, the forum state. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Courts are to "honor reasonable choice-of-law stipulations in contract cases." *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009); see also *Freeman v. Williamson*,

383 Ill. App. 3d 933, 939 (1st Dist. 2008) (as long as a choice-of-law provision does not contravene Illinois public policy and there is some relationship between the chosen forum and the parties to the transaction, an express choice of law provision will be given full effect). Once alerted to the choice-of-law provision, Boat U.S. did not advance a substantive argument that Illinois law should apply,[3] and the Court sees no reason not to give the express choice-of-law provision full effect with respect to the contract dispute. Therefore, the Court will apply Virginia law in deciding whether Plaintiff has stated a claim for breach of contract based on the implied duty of good faith and fair dealing. However, for the tort claims, the parties agree that Illinois law applies, and thus the Court applies Illinois law in deciding whether to dismiss Counts III and V. See, *e.g., Westchester Fire Insurance Company v. Zurich American Insurance Co*., 2014 WL 1018115, at *2 (N.D. Ill. Mar. 12, 2014) ("For tort claims, the relevant contacts include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.").

### B.     Breach of Implied Duty of Good Faith and Fair Dealing (Count II)

Under Virginia law, a plaintiff may bring a common law claim for breach of contract based on a violation of the implied duty of good faith and fair dealing. See *Stoney Glen, LLC v. Southern Bank and Trust Co.*, 2013 WL 1897111, at 4 (E.D. Va. May 2, 2013) ("The United

---

[3] In its response brief, Plaintiff chided Defendants for their reliance on Illinois law: "Boat U.S. is apparently unaware that its own Service Agreement contains a choice-of-law provision stating that Virginia law, not Illinois law, applies in determining the parties' rights and obligations under the agreement. Boat U.S. thus relies on an inapplicable body of Illinois case law." However, Plaintiff also apparently failed to read the contract (which is attached to the complaint) prior to drafting its allegations. As pointed out by Boat U.S. in its reply brief, Count II of Plaintiff's complaint alleges that "Illinois law provides that parties to a contract owe each other a duty of good faith and fair dealing in all relations arising out of the contract." Nevertheless, Plaintiff's reliance on Illinois law in its pleading does not constitute a waiver of the choice of law provision clearly set forth in the service agreement.

7

States Court of Appeals for the Fourth Circuit has consistently held that Virginia does recognize an implied duty of good faith and fair dealing in common law contracts."). However, a claim for breach of the implied duty of good faith and fair dealing must be raised in a claim for a breach of contract, not a tort action. *Id*. (citing *Charles E. Brauer Co., Inc. v. NationasBank of Va., N. A.*, 251 Va. 28, 33 (1996)). Virginia law recognizes a distinction between breach of contract claims where (1) a party has an express contractual right, but is alleged to have improperly exercised that express contractual right, and (2) a party is granted contractual discretion, but is alleged to have exercised that contractual discretion arbitrarily or in bad faith. See *Enomoto v. Space Adventures, LTD.*, 624 F. Supp. 2d 443, 450-51 (E.D. Va. 2009) (applying Virginia law). A party may bring breach of contract actions in either or both of these situations. *Id.* (denying motion to dismiss Count I (breach of contract) in its entirety, and also denying motion to dismiss as to Count II (breach on implied duty of good faith and fair dealing)). As the Fourth Circuit explained in *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.,* "although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." 156 F.3d 535, 542 (4th Cir. 1998).

Here, Boat U.S. allegedly terminated the service agreement based upon its claim that Chicago Marine violated a number of provisions in the service agreement. Some of these provisions granted Boat U.S. an express contractual right, which Chicago Marine alleges that Boat U.S. improperly exercised. See Compl., ¶ 64(a) (Chicago Marine did not violate Section I, Item 10 of the agreement, which grants Boat U.S. a right to terminated the agreement in certain circumstances for failure to comply with the law). Plaintiff further alleges that Boat U.S. exercised its contractual discretion in an arbitrary, capricious, and unreasonable manner. Thus, at

this stage, Chicago Marine has properly stated an additional breach of contract claim based upon Boat U.S.'s breach of the implied duty of good faith and fair dealing (Count II). See, *e.g.*, Enomoto, 624 F. Supp. 2d at 450 (elements of claim of breach of implied duty of good faith and fair dealing include "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant").

### C. Intentional Interference with Prospective Economic Advantage (Count III)

To establish a tortious interference with economic advantage claim pursuant to Illinois law,[4] a plaintiff must show: (1) "a reasonable expectancy of entering into a valid business relationship;" (2) "the defendant's knowledge of the expectancy;" (3) "an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy;" and (4) "damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 508 (7th Cir. 2007) (quoting *Voyles v. Sandia Mortgage Corp.,* 751 N.E.2d 1126, 1133–34 (Ill. 2001) (internal quotations omitted)).

Plaintiff alleges that when certain United States Coast Guard stations receive a call from a boater in need of towing or salvage services, they provide to the boater the name and number of a boat towing company in the area that can perform the necessary services. The Coast Guard stations allegedly provide this information on a rotating basis so that they do not favor one company over another. Plaintiff further alleges that Lenardson, Great Lakes Towing, and Boat U.S. intentionally interfered with Chicago Marine's prospective business relationships with customers in need of towing or salvage services by falsely telling United States Coast Guard stations in St. Joseph, Michigan and in Michigan City, Indiana that Chicago Marine was out of

---

[4] Related torts are commonly referred to as interference with prospective contractual relations or tortious interference with contract or business expectancy. See *Delloma v. Consolidation Coal Co.,* 966 F.2d 168, 170-71 (7th Cir. 1993).

9

business, that Manley had gone bankrupt, and that Manley's Coast Guard license had been revoked. According to Plaintiff, after Lenardson, Great Lakes Towing, and Boat U.S. made these statements, the Coast Guard stations in St. Joseph, Michigan and in Michigan City, Indiana stopped providing Chicago Marine's name and number to a boater in distress.

Plaintiff has identified a class of prospective customers—*i.e.*, boaters in need of towing or salvage services who contacted the Coast Guard stations—that might have used its services but for Defendants' alleged statements that Plaintiff was out of business, had gone bankrupt, and had lost its license. The Court can further infer from the allegations in the complaint that following the termination of the service agreement, Defendants were Plaintiff's competitors and were among the companies to whom the Coast Guard referred business. Finally, Plaintiff has allegedly that the Coast Guard operates in a certain manner—by rotating referrals among the various competitors—and it is a fair inference that those in the boat industry (such as Boat U.S. and Great Lakes) know that the Coast Guard operates in this manner. Accepting as true these allegations, as the Court must, Plaintiff has alleged that Defendants interfered with business that it may have acquired but for Defendants' conduct. This is all that is required to state a claim at this juncture.

### D. Defamation *Per Quod*

In Counts IV and V, Plaintiff alleges that Defendants defamed Chicago Marine on at least two occasions when it told the Coast Guard and boat show attendees that Chicago Marine had gone bankrupt and lost its operating license. "A statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007). To state a claim for defamation under Illinois law, the plaintiffs must

allege that: "a defendant made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff suffered damages as a result." *Giant Screen Sports v. Can. Imperial Bank of Commerce,* 553 F.3d 527, 532 (7th Cir. 2009) (citations omitted).

Defamatory statements may either be defamation *per se* or defamation *per quod*. "A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Muzikowski,* 477 F.3d at 904 (citation omitted). For a statement to be defamation *per se*, it must fall into one of five categories:

> (1) statements imputing the commission of a crime; (2) statements imputing infection with a loathsome communicable disease; (3) statements imputing an inability to perform or want of integrity in performing employment duties; (4) statements imputing a lack of ability or that otherwise prejudice a person in his or her profession or business; and (5) statements imputing adultery or fornication.

*Id.* (citation omitted). A statement is not *per se* defamatory if "it is reasonably capable of an innocent construction." *Tuite v. Corbitt,* 866 N.E.2d 114, 121 (Ill. 2006). However, "the innocent construction rule does not require courts to strain to find an unnatural innocent meaning for a statement when a defamatory meaning is far more reasonable." *Id.*

A plaintiff may bring a defamation *per quod* claim when "the defamatory character of a statement is not apparent on its face and extrinsic evidence is necessary to demonstrate its injurious meaning or where a statement is defamatory on its face but does not fall under one of the categories of statements which are actionable *per se*." *Maag v. Ill. Coalition for Jobs, Growth & Prosperity*, 858 N.E.2d 967, 975 (Ill. App. Ct. 2006). "A plaintiff bringing a *per quod* claim must also plead and prove special damages to recover." *Id.; Muzikowski,* 322 F.3d at 927 (stating that an itemization of losses or an allegation of "specific damages of actual financial injury" is a "required element" of a claim for defamation *per quod*); *Robinson v. Morgan*

*Stanley,* 2008 WL 4874459, at *5 (N.D. Ill. June 18, 2008) ("To allege an action for defamation *per quod* in federal court, Robinson must plead special damages in accordance with Illinois law and Federal Rule of Civil Procedure 9(g).").

Here, Defendants challenge only Plaintiff's claim of defamation *per quod* (Count V). Plaintiff has sufficiently alleged that Defendant Lenardson, on behalf of the corporate Defendants, was telling others that Chicago Marine had lost its license and had gone bankrupt. Plaintiff further alleged that Chicago Marine lost business and its reputation was injured as a result of Lenardson's statements. Defendants assert that Chicago Marine fails to allege extrinsic facts to explain the defamatory meaning of an alleged *per quod* statement. But Chicago Marine expressly alleges that Defendants' statements are defamatory on their face. Specifically, Chicago Marine alleges in Count V that Defendants "published false and defamatory statements regarding Chicago Marine" and that Defendants knew that the statements were false and defamatory. Chicago Marine does not need to plead extrinsic facts to show the defamatory nature of the statements because it is alleging the second type of *per quod* action—namely that if Defendants' statements do not fall into one of the actionable *per se* categories, Defendants' statements constitute defamation *per quod*. Although Plaintiff is pleading defamation *per quod* as an alternative to Count IV, such a tactic is permitted. See Fed. R. Civ. P. 8(d)(2); *Mihailovic v. Soldato*, 2004 WL 528010, at *6 (N.D. Ill. Mar. 17, 2004) (noting that "federal pleading rules specifically permit a party to plead in the alternative"). Therefore, Defendants' request to dismiss Count V is denied.

**IV. Conclusion**

For these reasons, the Court denies Defendant Boat/U.S. Inc.'s motion to dismiss [12] and denies the Great Lake Defendants' motion to dismiss [15]. This case is set for further status hearing on 5/6/2014 at 9:00 a.m.; the parties are directed to meet and confer and to file a joint status report with a proposed discovery plan no later than 5/2/2014.

Dated: April 23, 2014

Robert M. Dow, Jr.
United States District Judge