# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN J. MANLEY d/b/a/ CHICAGO MARINE TOWING, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 13 CV 5551 ) ) Judge Robert M. Dow, Jr. |
| BOAT/U.S., INC. et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss [35] pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Plaintiff/Counter-Defendant Chicago Marine Towing. Counter-Defendant seeks to dismiss Count I (breach of contract) and Counts III through IX (trademark infringement, dilution, and unfair competition under state and federal law) of the first amended counterclaim filed by Defendant/Counter-Plaintiff Boat/U.S., Inc. For the reasons set forth below, the Court grants the motion to dismiss [35] with respect to Count IX for trademark dilution under the Illinois Trademark Registration and Protection Act, 765 ILSC 1036/65 and denies the motion with respect to all of the other counts.

## I. Factual Background[1]

Plaintiff/Counter-Defendant John J. Manley d/b/a/ Chicago Marine Towing ("Chicago Marine") is an Illinois business that provides marine towing and salvage services to boats on

---

[1] The facts are drawn from Defendant/Counter-Plaintiff's first amended answer and counterclaim [34]. For purposes of Plaintiff/Counter-Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth therein. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); see also *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001).

Lake Michigan and its tributary waters. Defendant/Counter-Plaintiff Boat/U.S., Inc. ("Boat U.S.") is a Virginia corporation that provides water towing services, 24-hours dispatch services, and insurance coverage for recreational boaters. Boat U.S. has provided boating services since 1966 and has more than half a million members. [34], Am. Counterclaim at ¶ 4. It owns multiple registrations for trademarks, including "BoatU.S." and "TowBoatU.S." *Id.* at ¶ 5. Boat U.S. contends that these marks are "famous" within the meaning of the Lanham Act and are widely recognized by the general consuming public. See *id.* at ¶¶ 7, 37.

In February 2009, Chicago Marine entered into a license/service agreement (the "Agreement") with Boat U.S. Under the Agreement, Chicago Marine was a Boat U.S.-authorized towing company, with an area of exclusive operation in and around specified ports on Lake Michigan. Chicago Marine also was licensed and authorized to display the Boat U.S. trademarks on its vessels to show its affiliation with Boat U.S., while the Agreement was in effect. *Id.* at ¶ 10. Chicago Marine agreed to cease all use of the trademarks upon termination of the Agreement for any reason. *Id.* at ¶ 12.

Boat U.S. alleges that, while the Agreement was in force, Chicago Marine displayed the Boat U.S. trademarks—including "BoatU.S.," "TowBoatU.S.," "www.TowBoatUS.com," "Boat USA," and "the design of a Buoy"—on its motor vehicles, boats, website, signage, letterhead, paperwork, and clothing to promote its affiliation with Boat U.S. See *id.* at ¶ 11. On July 23, 2012, Boat U.S. terminated the Agreement due to Chicago Marine's purported breaches of four items in the Agreement. Boat U.S. alleges that after the termination, Chicago Marine continued to display the trademarks on its motor vehicle, boats, website, signage, letterhead, paperwork and clothing to falsely and improperly suggest an authorized affiliation with Boat U.S. *Id.* at ¶ 15. Boat U.S. asserts eight counts that relate to the alleged unauthorized use of the trademarks:

breach of contract (Count I); trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Count III) and under common law (Count VI); trademark dilution under 15 U.S.C. § 1125(c) (Count IV) and under the Illinois Trademark Registration and Protection Act, 735 ILCS 1036/65 (Count IX); false designation of origin under 15 U.S.C. § 1125(a) (Count V); unfair competition (Count VII); and (6) a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count VIII). Boat U.S. also alleges that Chicago Marine breached the implied covenant of good faith and fair dealing by acting inappropriately during a July 2012 salvage operation that resulted in termination of the Agreement (Count II).

The alleged circumstances of Boat U.S.'s termination of the Agreement are set forth fully in a previous memorandum opinion. See *Manley v. Boat/U.S. Inc.*, 2014 WL 1647117, at *1–2 (N.D. Ill. Apr. 23, 2014). They need not be repeated here for purposes of deciding the instant motion. In short, Boat U.S. terminated the Agreement after it received complaints about Chicago Marine's actions during a July 1, 2012 salvage operation to assist a boat that had run aground. Chicago Marine subsequently filed suit against Boat U.S. for wrongful termination. Chicago Marine also asserted defamation claims against Boat U.S. and against the company that replaced Chicago Marine after Boat U.S terminated the Agreement. Defendants filed motions to dismiss the complaint, which the Court denied. See *Manley*, 2014 WL 1647117, at * 6. Boat U.S. filed an answer and counterclaim thereafter [24], followed by its first amended answer and counterclaim [34], which is at issue now.

## II. Legal Standard

Chicago Marine moves to dismiss Boat U.S.'s amended counterclaim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); see also *Cozzi Iron & Metal, Inc.*, 250 F.3d at 574 (applying Rule 12(b)(6) standard to motion to dismiss counterclaims). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, "[the Seventh Circuit] accept[s] all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, however, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir.2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although, "[s]pecific facts are not necessary," the counterclaim must "give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the counterclaim and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

### III. Analysis

Chicago Marine moves to dismiss Count I and Counts III through IX of Boat U.S.'s amended counterclaim, all of which are premised on Chicago Marine's alleged use of Boat U.S.'s trademarks following termination of the Agreement. With respect to all eight of the counts, Chicago Marine argues that the counterclaim fails to allege sufficient facts regarding the use of the trademarks. With respect to Counts IV and IX for trademark dilution, Chicago Marine makes two additional arguments in support of dismissal: that the dilution claims fail because the

4

parties are competitors and that the trademarks are not "famous" under the relevant dilution statutes. Each of these arguments is addressed below.

> A. Counts III and V through VIII for trademark infringement and unfair competition

Count III and Counts V through VIII allege various trademark infringement and unfair competition claims. Boat U.S. brings two federal claims under 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act for trademark infringement and false designation of origin (or unfair competition). The Lanham Act protects registered marks from interference by state legislation, prevents unfair competition, and protects against fraud by the use of copies or counterfeits of marks. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) (citing 15 U.S.C. § 1127). To state a claim under the Lanham Act, Boat U.S. must sufficiently allege that (1) its trademarks are protectable, and (2) Chicago Marine's use of the trademarks is likely to cause confusion among consumers. See *id.* at 638, n.8 (7th Cir. 2001); *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1215 (7th Cir. 1997). The other three claims are brought under Illinois law for common law trademark infringement, common law unfair competition, and a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* ("IUDTPA").

All of the counts are premised on the same factual allegations regarding Chicago Marine's use of the Boat U.S. trademarks and need not be addressed separately. As the parties point out, the same legal analysis applies to all five claims. Where a "plaintiff's factual allegations under the [I]UDTPA also form the basis for the plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Desmond v. Chicago Boxed Beef Distrib., Inc.*, 921

5

F. Supp. 2d 872, 884 (N.D. Ill. 2013) (quoting *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004)). See also *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (applying same analysis to federal trademark infringement and unfair competition claims, Illinois common law trademark infringement and unfair competition claims, and unfair trade practice claim under the IUDTPA); *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) ("The state unfair competition claim is analyzed under the likelihood of confusion standard and thus mirrors [the trademark] infringement analysis.").

There is no dispute that Boat U.S. alleges the first element of a trademark claim—that it has protectable trademarks in "BoatU.S." and "TowBoatU.S." Boat U.S. expressly alleges in its amended counterclaim that it owns multiple registrations for these marks; it also attached the registrations as an exhibit to its counterclaim. See [34], Am. Counterclaim at ¶ 5; *id.*, Ex. A. The dispositive issue (on which the parties focused their briefing) is whether Boat U.S. sufficiently alleges the second element of a trademark claim—that Chicago Marine used the trademarks and caused consumer confusion.

Although the allegations in Boat U.S.'s amended counterclaim are not lengthy, they nonetheless provide "fair notice of what the * * * claim is and the grounds upon which it rests." See *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The allegations also are sufficient to raise the possibility of relief above a "speculative level," assuming they are true. See *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Specifically, Boat U.S. alleges that under the Agreement, Chicago Marine "was licensed and authorized to use and display 'BoatU.S.', 'TowBoatU.S.' and other BoatU.S. trademarks on [its] approved vessels to show [its] authorize affiliation with BoatU.S[.]" [34], Am. Counterclaim at ¶ 10. As permitted, and "to promote [its]

authorized affiliation with BoatU.S., [Chicago Marine] used, affixed, and displayed BoatU.S.'s trademark on Chicago Marine Towing's motor vehicles, watercraft, website, signage, letterhead, paperwork, and clothing, including but not limited to marks comprising 'BoatU.S.,' 'TowBoatU.S.,' 'www.TowBoatU.S.com,' 'Boat USA,' and 'the design of a Buoy.'" *Id*. at ¶ 11.  Boat U.S. also alleges that "[a]fter termination of the Agreement, [Chicago Marine] continued to use BoatU.S.'s trademarks on Chicago Marine Towing's motor vehicles, watercraft, website, signage, letterhead, paperwork, and clothing, to falsely and improperly suggest an authorized affiliation with BoatU.S." *Id.* at ¶ 15.  The amended counterclaim states that Chicago Marine's "continued use of BoatU.S.'s marks will injure BoatU.S. by causing a likelihood that the public will be confused or mistaken into believing that the goods or services provided by [Chicago Marine] are associated with, endorsed, or sponsored by BoatU.S." *Id.* at ¶ 31.

Chicago Marine contends that these allegations are insufficient because they fail to allege "what specific BoatU.S. trademarks * * * Chicago Marine is allegedly using," "how Chicago Marine is allegedly 'continuing to use' such marks * * * or [ ] when and where such alleged use occurred[.]"  [36], Pl.'s Memo. at 7 (emphasis omitted).  Chicago Marine asserts that it "has no idea what trademarks were allegedly used or how they were used in a manner that is likely to cause consumer confusion." *Id.* at 3.  The Court respectfully disagrees.

First, Boat U.S.'s allegations are sufficient to put Chicago Marine on fair notice of its trademark claims.  Boat U.S. alleges that pursuant to the Agreement, Chicago Marine displayed the trademarks to show its affiliation with Boat U.S.; in its reply brief, Chicago Marine admits that "BoatU.S. trademarks were properly displayed on its boats prior to determination [sic] of the Agreement," see [42], Pl.'s Reply at 5.  The thrust of Boat U.S.'s counterclaim is simply that Chicago Marine continued to display these same trademarks after it was required to remove them

when Boat U.S. terminated the Agreement. Given the relatively straightforward circumstances of the alleged trademark use, the Court concludes that Boat U.S. has provided enough detail to put Chicago Marine on fair notice of its counterclaims. Given the facts of the case and the parties' relationship, Boat U.S. also alleges plausible claims, even though the factual allegations in the amended counterclaim are not particularly lengthy.

Second, Boat U.S. sufficiently alleges that Chicago Marine's use of the marks is likely to cause confusion among consumers. The likelihood of consumer confusion is a question of fact, see *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 354 (7th Cir. 1983), that is informed by seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another," *Packman,* 267 F.3d at 643. No single factor is dispositive and varying weights may be accorded to each depending on the facts presented. See *id.* Here, Boat U.S.'s allegations suggest that several factors are met.

Specifically, Boat U.S. alleges that its trademarks are highly recognized in the boating industry. See [34], Am. Counterclaim ¶¶ 7–8. The marks that Chicago Marine displayed allegedly are the same as Boat U.S.'s, as Chicago Marine was permitted under the Agreement to display the Boat U.S. marks to indicate affiliation with Boat U.S. Moreover, the marks were displayed on Chicago Marine's boats in connection with its towing services on Lake Michigan—the same service that Boat U.S. offers. See [34], Am. Answer ¶¶ 2, 4. Finally, Chicago Marine allegedly used the trademarks to confuse consumers and to "trade off the fame of BoatU.S. and the registered BoatU.S. marks." [34], Am. Counterclaim at ¶ 29. The Court thus concludes that Boat U.S. sufficiently alleges a likelihood of confusion.

For the reasons stated above, the Court denies Chicago Marine's motion to dismiss with respect to Count III and Counts V through VIII.

### B. Count I for breach of contract

Count I alleges that Chicago Marine breached the Agreement by continuing to use the Boat U.S. trademarks after termination of the Agreement. According to Boat U.S., the "continued use of [its] trademarks after the Agreement was terminated is a breach of the Agreement." [34], Am. Counterclaim at ¶ 16. To state a valid breach of contract claim, a plaintiff must sufficiently allege (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Chicago Marine argues that this counterclaim is deficient for the same reason that Counts III and V through III (discussed above) are—that Boat U.S. has not sufficiently alleged Chicago Marine's use of the trademarks. Chicago Marine specifically argues that Boat U.S. has not provided sufficient allegations regarding the third element of a breach of contract claim—an actual breach of the Agreement—to satisfy the federal pleading standard. In its brief, Chicago Marine simply relies on its prior arguments regarding the trademark and unfair competition claims. It contends that the contract claim similarly does not sufficiently allege that Chicago Marine continued to use the Boat U.S. marks post-termination. See [36], Pl.'s Memo. at 9–10. As explained above, and for the same reasons, the Court concludes that Boat U.S. has provided sufficient factual allegations regarding Chicago Marine's continued use of the trademarks. Accordingly, the Court will not dismiss Boat U.S.'s breach of contract counterclaim and denies Chicago Marine's motion as to Count I.

C.     Counts IV and IX for trademark dilution

In Counts IV and IX, Boat U.S. alleges dilution under the Lanham Act, 15 U.S.C. § 1125(c) and the Illinois Trademark Registration and Protection Act, 735 ILCS 1036/65, respectively.  To state a valid claim for federal trademark dilution, a plaintiff must allege that (1) its trademark is famous, (2) the defendant adopted its mark after the plaintiff's mark became famous, (3) the defendant's use of its mark "causes dilution" of the plaintiff's famous mark, and (4) the defendant's use of its trademark is commercial and in commerce.  See *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3 456, 466 (7th Cir. 2000).  Illinois law similarly provides a remedy to "[t]he owner of a mark which is famous * * * against another person's commercial use of a mark or tradename, if the use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." *Desmond*, 921 F. Supp. 2d at 883 (quoting 765 ILCS 1036/65).

The purpose of a dilution action is to protect "the trademark owner from the erosion of the distinctiveness and prestige of a trademark caused by * * * a proliferation of borrowings, that while not degrading the original seller's mark, are so numerous as to deprive the mark of its distinctiveness and hence impact." *Eli Lilly & Co.*, 233 F.3d at 466 (ellipsis in original) (quoting *Illinois High School Ass'n v. GTE Vantage Inc.*, 99 F.3d 244, 247 (7th Cir. 1996)).  Tarnishing and blurring are the two principal forms of dilution that are recognized by courts.  See *id.*  Boat U.S. proceeds under the theory that Chicago Marine's use of the marks will cause dilution by blurring.  See [34], Am. Counterclaim at ¶ 39.

Blurring occurs when consumers see a famous mark on different goods and services such that the mark "lose[s] its ability to serve as a unique identifier of the plaintiff's product." *Eli Lilly & Co.*, 233 F.3d at 466 (quoting *Hormel Foods Corp. v. Jim Henson Prod., Inc.*, 73 F.3d

497, 506 (2d Cir. 1996)). Boat U.S. alleges several reasons that suggest that blurring will occur, including that Chicago Marine's marks are the same as Boat U.S.'s in wording and logo; the Boat U.S. marks are inherently distinctive; Boat U.S. exclusively licenses its marks in service agreements; the Boat U.S. marks are widely recognized by the general consuming public; and Boat U.S. believes that Chicago Marine intends to create an association with the Boat U.S. marks. See [34], Am. Counterclaim at ¶ 39.

Chicago Marine asserts three reasons to dismiss the dilution claims. First, it argues that (like the other counterclaims) Boat U.S. fails to sufficiently allege that Chicago Marine actually used the Boat U.S. trademarks. Again, for the reasons stated above, the Court finds this argument unpersuasive and concludes that Boat U.S. sufficiently alleges that Chicago Marine used its trademarks after the termination of the Agreement. Second, Chicago Marine argues that trademark dilution does not apply because the parties are competitors. Third, Chicago Marine contends that Boat U.S. does not sufficiently allege that the trademarks are "famous." The latter two arguments are addressed below.

### 1. The parties' status as competitors

Chicago Marine argues that both the federal and state dilution claims must be dismissed because the parties are competitors. With respect to the Illinois dilution claim, Chicago Marine is correct that dilution claims are unavailable where the parties are competitors, as is the case here. See *AHP Subsidiary Holding Co.*, 1 F.3d at 619; see also *S & A Futures, LLC--Series 2 v. Sysco Chicago, Inc.*, 2012 WL 851556, at *7 (N.D. Ill. Mar. 13, 2012) (dismissing dilution claim under the Illinois Trademark Registration and Protection Act because the plaintiffs' allegations established that the parties were competitors). With respect to the federal dilution claim,

however, whether Chicago Marine competes with Boat U.S. is irrelevant. See *Eli Lilly & Co.*, 233 F.3d at 466. The dilution provision of the Lanham Act specifically provides that:

> * * * the owner of a famous mark that is distinctive * * * shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, *regardless of * * * competition*[.]

§ 1125(c)(1) (emphasis added). The issue of competition therefore is relevant only to Count IX for dilution under 765 ILCS 1036/65.[2]

Here, the allegations establish that Boat U.S. and Chicago Marine are competitors. Parties qualify as competitors in the context of dilution claims when they are engaged in the same kind of business in the same area. See, e.g., *S & A Futures, LLC--Series 2*, 2012 WL 851556, at *7 (finding that parties qualified as competitors where parties competed for market share and defendants' meat and food products where alleged to be alternatives to the plaintiffs' products); *Isringhausen Imports, Inc. v. Nissan North America, Inc.*, 2011 WL 1331890, at *2, *6 (N.D. Ill. Feb. 3, 2011) (finding that parties were competitors where plaintiff alleged that defendant's cars and services competed directed with plaintiff's and were sold via the same trade channels, to the same customers, and in the same localities). Boat U.S. alleges that it provides various boating services, including towing and salvage services and that it owns trademark registrations for "a variety of boating goods and services, including towing and salvage." [34],

---

[2] Chicago Marine urges the Court to hold that dilution claims also are unavailable to competitors under federal law. In support, it cites J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:74 (4th ed. 2014) and a 2002 district court case from the Central District of California, *YKK Corp. v. Jungwoo Zipper Co., Ltd.*, 213 F. Supp. 2d 1195. See [42], Pl.'s Reply at 8. The Court declines to hold that a federal dilution claim is unavailable to competitors. The plain language of the statute indicates that competitors may bring dilution claims, as the McCarthy treatise acknowledges. See McCarthy, *supra*, at § 24:74 ("The 2006 federal antidilution law on its face is capable of application to competitive situations."). The Seventh Circuit in *Eli Lilly & Co.* also indicated that competition is irrelevant to a federal dilution claim. See 233 F.3d at 466 (stating that whether the parties' trademarks compete is irrelevant under § 1125(c)(1)).

Am. Counterclaim at ¶¶ 4–5; see also [34], Am. Answer at ¶ 4. Boat U.S. admits that Chicago Marine provides towing and salvage services as well. See Am. Answer at ¶ 2. In its response brief, Boat U.S. also writes that "the products and services [ ] offered under BoatU.S.'s marks and Chicago Marine's marks [are offered] to the same consumers, in the same geographic region" in its argument section regarding consumer confusion. See [41], Def.'s Resp. at 5.

Boat U.S. maintains, however, that the parties do not qualify as direct competitors. It contends that the parties "are not vying for dollars from the same consumer group," because it is a membership association that offers towing services (among other services and products) to its *members* nationwide, whereas Chicago Marine provides towing services to boaters generally. See *id.* at 10–11. This argument is unpersuasive. At the very least, the towing services that Boat U.S. provides to its members can be seen as an alternative to using the towing services of Chicago Marine, particularly given that the parties operate in the same location and provide the same services to boaters. See *S & A Futures, LLC--Series 2*, 2012 WL 851556, at *7 (finding that parties were competitors where the defendants' products might be seen as an alternative to the plaintiffs').

For these reasons, the Court dismisses Boat U.S.'s claim for dilution under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65 (Count IX).

### 2. Qualifying as a "famous" trademark

With respect to the Count IV, the Lanham Act protects only "famous" marks from dilution. *Control Solutions, LLC v. Oshkosh Corp.*, 2011 WL 1131329, at *3 (N.D. Ill. Mar. 28, 2011). Under the Act, "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's

owner." 15 U.S.C. § 1125(c)(2)(A). Several factors may be considered in determining whether a mark possesses "the requisite degree of recognition," including:

> (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* In 2006, § 1125 was amended to use "'the general public' as the benchmark" thus "eliminat[ing] any possibility of 'niche fame,' which some courts had recognized before the amendment." *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007). As Chicago Marine points out, "[i]t is not easy for a mark to qualify for dilution protection," *Top Tobacco, L.P. v. North Atlantic Operating Co.*, 2007 WL 118527, at * 8 (N.D. Ill. Jan. 4, 2007); the dilution provision of the Lanham Act "is to be applied selectively and is intended to provide protection only to those marks which are both distinctive and famous," *id.* (quoting Senate Judiciary Committee Report on S. 1883, S. Rep. No. 100-515, at 41-42 (Sept. 15, 1998)). For purposes of deciding Chicago Marine's Rule 12(b)(6) motion, the Court must, of course, accept as true all well-pleaded allegations in Boat U.S.'s counterclaim.

Boat U.S. includes several allegations that support its assertion that the "Boat.U.S." and "TowBoatU.S." trademarks are famous. For one, Boat U.S. alleges that it has provided services to boaters nationwide since 1966. [34], Am. Counterclaim at ¶ 4. According to the Trademark Registration forms attached to its counterclaims, the trademark "TowBoatU.S." was registered in 1994. See *id.*, Ex. A. Other Boat U.S. trademarks were registered in the mid-90's and early 2000's. See *id.* Additionally, Boat U.S. has over half a million members and the nation's largest

14

towing fleet. *Id.* at ¶ 4. Boat U.S. also has permeated the boating industry, has a large and loyal membership base, and has enjoyed media coverage, according to the amended counterclaim. *Id.* at ¶¶ 7–8. Boaters (both members and non-members) allegedly are accustomed to seeing, and expect to see, Boat U.S. and its marks upon navigable waters. *Id.* at ¶ 8. Due to the "publicity afforded to the BoatU.S. marks," Boat U.S. claims that its marks are "widely recognized by the general consuming public of the United States as a designation of BoatU.S.'s services." *Id.* at ¶ 37.

Chicago Marine contends that the foregoing allegations at most establish that the trademarks are well known in the niche market of insured boat owners. See [36], Pl.'s Memo. at 12. Although the allegations certainly suggest that the Boat U.S. marks are widely known to boaters, the allegations also are sufficient to support the conclusion that the marks are "famous" under the Lanham Act. Boat U.S. alleges several facts that plausibly suggest that its marks are recognized by the general consuming public—the length of time it has been in business, the length of time since its mark were registered, media attention, and a large customer base.

Chicago Marine cites *Plumeus, Inc. v. Intersog, LLC*, 2013 WL 5609331 (N.D. Ill. Nov. 11, 2013) in support of its argument that the allegations regarding fame are insufficient. In that case, a district court dismissed a dilution claim because it concluded that the allegations regarding the fame of the mark fell short. There, however, the plaintiff merely alleged that its mark was registered, that it had invested substantial resources in marketing campaigns, and that the mark had become famous through the plaintiff's longstanding and continuous use of the mark. See *Plumeus, Inc.*, 2013 WL 5609331, at *2. By contrast, Boat U.S. alleges facts that support its allegation that the general public recognizes its marks, including its longstanding

presence in the boating industry, its members, its large and loyal customer base, media coverage, and the presence of its marks for a relatively long period of time.

For these reasons, the Court concludes that Boat U.S. has sufficiently alleged that its marks are famous under 15 U.S.C. § 1125(c). Boat U.S. may therefore proceed on its federal dilution claim (Count IV).

**IV.     Conclusion**

For the reasons stated above, the Court concludes that Boat U.S. fails to state a claim for trademark dilution under the Illinois Trademark Registration and Protection Act (Count IX). The Court finds that the other counterclaims at issue in Chicago Marine's motion to dismiss (Count I and Counts III through VIII) are sufficient under Rule 12(b)(6) and should not be dismissed. The Court therefore denies in part and grants in part Chicago Marine's motion to dismiss [35]. The case is set for a status on January 8, 2015 at 9 a.m.

Dated: December 12, 2014

_____
Robert M. Dow, Jr.
United States District Judge