# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN J. MANLEY d/b/a CHICAGO MARINE TOWING, | ) ) ) | Case No. 13-cv-5551 |
| Plaintiff/Counter-Defendant | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| BOAT/U.S. INC. et al., | ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant/Counter-Plaintiff Boat U.S. Inc.'s ("Boat U.S.") motion to strike [54] affirmative defenses 1–16 from Plaintiff/Counter-Defendant's ("Chicago Marine") second amended answer and affirmative defenses [51]. For the reasons set forth below, the Court grants Boat U.S.'s motion [54] without prejudice as to affirmative defenses 1, 2, 5, 7, 8, 9, 10, 11, 13, and 15 and with prejudice as to affirmative defenses 3, 4, 6, 12, 14, 16. Chicago Marine is given until 4/29/2016 to replead any affirmative defenses that are dismissed without prejudice.

## I. Background

Plaintiff John J. Manley d/b/a Chicago Marine Towing ("Chicago Marine") is an Illinois corporation located in Chicago, Illinois, which provides marine towing and salvage services on Lake Michigan and its tributary waters. Boat/U.S., Inc. ("Boat U.S.") is a Virginia corporation that provides water towing services, 24-hour dispatch service, and insurance coverage for recreational boaters. Defendant Richard Lenardson is the owner of Defendant Great Lakes Repair d/b/a Great Lakes Towing & Repair ("Great Lakes Repair"); both Lenardson and Great Lakes are citizens of Michigan. Because there is complete diversity of citizenship between the

parties and the amount in controversy exceeds $75,000, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

On or about February 5, 2009, Chicago Marine entered into a service agreement with Boat U.S. Pursuant to the agreement, Chicago Marine was a Boat U.S.-authorized marine towing company, with a protected area of exclusive operation in and around certain specified ports on Lake Michigan. The agreement provided that it would remain in effect until November 30, 2013, and that it could be terminated only by Boat U.S. prior to November 30, 2013, by written notice of proposed termination in the event that Chicago Marine breached Section I, Items 3, 4, 9, 10, or 11 of the agreement.

On July 1, 2012, Boat U.S.'s Towing Dispatch Service called Chicago Marine and dispatched Chicago Marine to assist a non-member boater, Nathan Locher ("Locher"), whose powerboat had run aground on shore in a navigable waterway located at or near Wells Beach, Indiana. Albert Bartkus ("Bartkus"), one of Chicago Marine's employees at that time, was dispatched to assist Locher. When Bartkus arrived, Locher and a woman were still on board the grounded vessel. Bartkus advised Locher that this was a salvage operation and that for safety reasons he and his girlfriend would have to disembark from the boat before it was pulled off the shore. Locher signed the salvage contract and went ashore. Chicago Marine towed the Locher vessel to Crowley's boatyard.

Shortly thereafter John Manley arrived at the site to transport Locher and the woman either to the boatyard or their home. According to the complaint, Locher and the woman were belligerent, impaired by drugs and alcohol, and refused to comply with his directives. Eventually Manley drew a handgun and ordered the couple to sit on the transom of the boat and to stay sitting there until the vessel reached shore. He advised the couple that he would not take

them to the boatyard, but instead would do so the following morning after they "came down" from the drugs and alcohol, and that they could make arrangements at that time to remove any personal belongings from the boat. Manley dropped the couple off at Locher's home port without further incident.

The following morning, on July 2, 2012, a Chicago Marine employee contacted Locher, informed him that his boat was located at Crowley's, and made arrangements for Locher to remove any personal belongings from the boat. Manley also made arrangements for two police officers to be present at the boatyard to ensure that Locher caused no problems. By 3 p.m. on July 2, 2012, Locher had removed his personal belongings from the boat and left the boatyard without incident. Locher regained possession of his boat from Chicago Marine on August 2, 2012.

After the events of July 1, 2012, Boat U.S. informed Manley that it had received complaints from both Locher and his insurer, American Family Insurance, about Chicago Marine's services and billings, including Manley's pointing of a handgun at Locher. Manley told Boat U.S. about the salvage operation and why Manley believed his actions were reasonable and necessary under the circumstances. On July 23, 2012, Boat U.S. delivered to Chicago Marine a letter terminating the service agreement. In the termination letter, Boat U.S. informed Chicago Marine that it was terminating the agreement, effective July 23, 2012 at 12:00 p.m., due to Chicago Marine's purported breaches of Section I, Items 2, 10, 11 and Section II, Item 1 of the service agreement.

The complaint alleges on information and belief that after Boat U.S. terminated the agreement, Boat U.S. contracted with Great Lakes Repair and its president, Lenardson, to perform towing and salvage operations for certain of the port areas that previously were Chicago

Marine's exclusive areas under the service agreement. Subsequently, Boat U.S. was an exhibitor at the Chicago Boat Sports & RV Show (the "Chicago Boat Show") on January 9, 2013 to January 13, 2013 at McCormick Place in Chicago, and it paid for and maintained a booth at which its representatives promoted Boat U.S.'s services and products. Lenardson was one of the Boat U.S. representatives who manned the Boat U.S. booth at the Chicago Boat Show. According to the complaint, Lenardson wore a hat and shirt with Boat U.S.'s logo while he was manning the booth.

On or about January 13, 2013, Keith Pearson, who works for Chicago Marine as a subcontractor, attended the trade show. Pearson allegedly spoke to Lenardson while he was manning the Boat U.S. booth. Pearson identified himself as a salvage diving subcontractor who worked for Chicago Marine and told Lenardson that he was interested in working for Boat U.S. The complaint alleges that Lenardson responded to Pearson by making false statements about Chicago Marine, including that Manley had gone bankrupt and that Manley's Coast Guard license had been revoked. The complaint further alleges that Lenardson made these same types of statements on or about May 18, 2013, to officers at the United States Coast Guard stations in St. Joseph, Michigan and in Michigan City, Indiana.

On August 2, 2013, Chicago Marine filed a five-count complaint against Defendants alleging breach of contract for wrongful termination against Boat U.S. (Count I), breach of implied covenant of good faith and fair dealing against Boat U.S. (Count II), intentional interference with prospective economic advantage against Boat U.S. and the Great Lakes Defendants (Count III), defamation *per se* against Boat U.S. and the Great Lakes Defendants (Count IV), and defamation *per quod* against Boat U.S. and the Great Lakes Defendants (Count V). Defendant Boat U.S. moved to dismiss Counts II, III, and V, and the Great Lake Defendants

moved to dismiss Counts III and V. The Court denied both motions on April 23, 2014. See [21].

Boat U.S. filed its first amended answer and raised nine counterclaims against Chicago Marine including breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), trademark infringement under 15 U.S.C. § 1114 (Count III) and under common law (Count VI), trademark dilution under 15 U.S.C. § 1125(c) (Count IV) and under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65 (Count IX), false designation of origin under 15 U.S.C. § 1125(a) (Count V), unfair competition (Count VII), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count VIII). See [34]. Chicago Marine moved to dismiss many of Boat U.S.'s counterclaims, all of which the Court denied except Count IX for trademark dilution under the Illinois statute, on December 12, 2014. See [46]. On May 29, 2015, Chicago Marine filed its second amended answer to Defendants' counterclaims. See [51]. Boat U.S. filed the motion to strike [54] Chicago Marine's sixteen affirmative defenses laid out in its second amended answer [51], to which the Court now turns.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); see also *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 2015 WL 1520375, at *3 (N.D. Ill. Mar. 30, 2015) ("But where a defendant's asserted [affirmative defenses] are both legion and mostly frivolous, a motion to strike can aid the parties in resolving the case by removing irrelevant issues from consideration).

Affirmative defenses are pleadings and, as such, remain subject to the pleading requirements of the Federal Rules of Civil Procedure. *Heller*, 883 F.2d at 1294 (citation omitted); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 2012 WL 4120440, at *10 (N.D. Ill. Sept. 19, 2012) (noting that affirmative defenses must be adequately pled under Rules 8 and 9 and must withstand a Rule 12(b)(6) challenge). While the Seventh Circuit has yet to weigh in on the issue, most courts in this district have applied the "plausibility" pleading standard in *Twombly* and *Iqbal* to affirmative defenses. See *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015); *Naylor v. Streamwood Behavioral Health Sys.*, 2012 WL 5499441, at *7 (N.D. Ill. Nov. 13, 2012) (collecting cases). District courts have considerable discretion in ruling on motions to strike. See *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009).

**III.    Analysis**

As a preliminary matter, the Court agrees with the majority of courts in this district that the *Twombly* and *Iqbal* pleading standard applies to the pleading of affirmative defenses. See, *e.g.*, *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 2012 WL 4120440, at *7 (N.D. Ill. Sept. 19, 2012) (discussing the issue at length and citing cases). While there are rational points to be made on both sides of the issue, because affirmative defenses serve as a platform for (what could be very costly) discovery, it is important that plaintiffs are given fair notice of the basis for each defense to allow them to litigate the defenses as they would any other issue. And while defendants are under somewhat of a time crunch to develop and plead affirmative defenses in their first responsive pleading, defendants always have the option to add affirmative defenses at a later time should they develop a plausible basis for doing so. See Fed. R. Civ. P. 15(a)(2) (instructing courts to freely give a party leave to amend its pleadings "when justice so requires");

*Kirsch v. Brightstar Corp.*, 2014 WL 5166527, at *5 (N.D. Ill. Oct. 10, 2014) (allowing defendant to add an affirmative defense more than a year after defendant filed its answer and more than a month after the close of discovery). That being said, the pleading deficiencies here violate even the pre-*Twombly* and -*Iqbal* standard, making any further discussion of the relevant pleading standard merely academic. See, *e.g.*, *Heller*, 883 F.2d at 1295 (affirming the rejection of "bare bones" and "conclusory" affirmative defenses pre-*Twombly* and -*Iqbal*).

### A. Whether Affirmative Defenses 1, 2, 3, 5, 6, and 12–16 are Inadequately Pled

#### 1. Whether unclean hands defense (1) should be stricken

Boat U.S. asserts that Chicago Marine's affirmative defenses 1 and 2—unclean hands, waiver and estoppel—should be stricken because they are "bare bones statements of legal conclusions without any factors or context" and hence fail to provide them with fair notice. [54-1] at 5.[1] Affirmative defenses 1 and 2 read as follows:

1. Counter-Defendant asserts Counter-Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands due to Counter Plaintiff's own wrongful conduct.
2. Counter-Defendant asserts Counter-Plaintiff's claims are barred, in whole or in part, by the doctrine [sic] of waiver and estoppel.

[51] at 18.

Although the doctrine of unclean hands is not enumerated in Rule 8(c), it is a properly designated and often raised affirmative defense. See, *e.g.*, *Energetec Sys., Inc. v. Kayser,* 1986 WL 8058, at *2 (N.D. Ill. July 17, 1986) ("The defense of unclean hands is shown by misconduct by the plaintiff involving the transaction complained of, which amounts to fraud, misconduct or bad faith toward the defendant making the contention."). If fraud is alleged under the doctrine of unclean hands, Rule 9(b) requires that allegations of fraud include the particular circumstances

---

[1] Boat U.S. points out that Chicago Marine conceded that these affirmative defenses are conclusory when Chicago Marine moved to strike the same affirmative defenses earlier in the litigation. See [30].

7

involved, including the time, place, and specific contents of the alleged false representations or omissions. Fed. R. Civ. P. 9(b). In other words, the party claiming fraud must place the opposing party on notice of the "who, what, where and when of the alleged fraud." *Ackerman v. Northwestern Mut. Life. Ins.,* 172 F.3d 467, 469 (7th Cir. 1999). It is unclear whether Chicago Marine is alleging fraud. However, if it is, Chicago Marine does not set out the "who, what, where and when" nor does Chicago Marine put Boat U.S. on specific notice as to how its conduct might be characterized as fraudulent in accordance with Fed. R. Civ. P. 9(b). Whether the facts alleged by Chicago Marine constitute fraudulent conduct on the part of Boat U.S. remains to be seen. Rule 9(b) still requires that Chicago Marine clearly the identity, time, place, content, and method of the misrepresentation.

The doctrine of unclean hands includes the standards of "misconduct" and "bad faith" as well as fraud, and Chicago Marine appears to be invoking the former by referencing "[Boat U.S.'s] own wrongful conduct." See [51] at 18; see*, e.g., Zic v. Italian Gov't Travel Office,* 130 F. Supp. 2d 991, 999 n.8 (N.D. Ill. 2001) (unclean hands is an equitable affirmative defense that need not be plead with particularity unless fraud is alleged invoking Rule 9(b)). However, Chicago Marine provides no factual context to put Boat U.S. on notice as to what "wrongful conduct" Chicago Marine is referring. Accordingly, the Court strikes Chicago Marine's affirmative defense 1 without prejudice and with leave to amend.

### 2. Whether waiver and estoppel (2) should be stricken

Waiver and estoppel, pled by Chicago Marine as affirmative defense 2, are actual affirmative defenses, but they are equitable defenses that must be pled with the specific elements required to establish the defense. *See State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 279 (N.D. Ill. 2001). Merely stringing together a long list of legal defenses is insufficient to

satisfy Rule 8(a). "It is unacceptable for a party's attorney simply to mouth [affirmative defenses] in formula-like fashion ('laches,' 'estoppel,' 'statute of limitations' or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense—which after all is the goal of notice pleading." *Id*. Were it acceptable to allege boilerplate affirmative defenses in this fashion, a party could simply cut and paste Rule 8(c)'s list of affirmative defenses (along with any other recognizable affirmative defenses) into its answer so as to preserve each defense should a plausible argument arise at some point down the road. This is just the tip of the iceberg of potential abuses that could arise from such a lax pleading standard. But of course this would be unfair to the nonmovant and contrary to the "just, speedy, and inexpensive" guideposts that govern civil actions. Fed. R. Civ. P. 1. Chicago Marine has not provided any of the minimal specifics required by Rule 8 to put Boat U.S. on notice as to how or why Chicago Marine feels it is entitled to relief under these theories. As such, Chicago Marine's affirmative defense 2 is stricken without prejudice and with leave to amend.

### 3. Whether affirmative defenses 3, 5, 6, and 12–16 should be stricken

Plaintiffs also argue that affirmative defenses 3, 5, 6, and 12–16 should be stricken as inadequately pled. Rule 8(c) provides a non-exhaustive list of affirmative defenses, which does not include the seven defenses at issue here. See Fed. R. Civ. P. 8(c). The Seventh Circuit "has identified two approaches for determining whether a defense not specifically enumerated in Rule 8(c) is an affirmative defense: a defense is an affirmative defense (a) 'if the defendant bears the burden of proof' under state law or (b) 'if it [does] not controvert the plaintiff's proof.'" *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (quoting *Brunswick Leasing Corp. v. Wisc. Cent., Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998)).

Affirmative defenses 3, 5, 6 read as follows:

> 3. The Counter-Plaintiff's damages are vague and speculative.
>
> * * * *
>
> 5. Counter-Defendant pleads the doctrines of ratification, consent and acquiescence to the extent they may apply.
>
> 6. Counter-Plaintiff is not entitled to attorney fees as an award in this action. To the extent Counter-Defendant prevails in defending Counter-Plaintiff's claims, it shall be entitled to attorney fees.

See [51] at 18.

As for affirmative defense 3, while failure to mitigate damages, as opposed to liability, is an appropriate affirmative defense under Fed. R. Civ. P. 8(c), see *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1306 (7th Cir. 1984), simply accusing Boat U.S. of pleading vague and speculative damages does not state an affirmative defense. Accordingly, affirmative defense 3 is stricken with prejudice.

Regarding affirmative defense 5, Chicago Marine asserts that Boat U.S.'s counterclaims and the relief sought are barred in whole or in part under the doctrine of acquiescence (and the related doctrines of ratification and consent). Acquiescence is a proper affirmative defense, and it requires active consent to the alleged infringer's conduct. See *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997). On a defense of acquiescence, Chicago Marine would need to prove that (1) Boat U.S. actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was inexcusable; and (3) the delay caused Chicago Marine undue prejudice. Chicago Marine provides no facts or context for how it believes these doctrines apply to this case. Indeed, Chicago Marine pleads them "to the extent they may apply." That threadbare assertion fails to state a defense. Affirmative defense 5 is stricken without prejudice.

As for affirmative defense 6, a request for fees and costs is not an affirmative defense, and a party should raise such an argument by motion after the Court has decided the merits of the case. See *Drager v. Bridgeview Bank,* 2011 WL 2415244, at *6 (N.D. Ill. June 13, 2011). Accordingly, affirmative defense 6 is stricken with prejudice.

Affirmative defenses 12–14 read as follows:

12. Counter-Defendant asserts that the use of the red color for maritime towing and salvage vessels had a functional purpose.

13. Counter-Defendant endeavored in good faith to remove all marks from its vessels within a reasonable time from the date of its termination by BoatU.S.

14. Counter-Defendant asserts that the BoatU.S. marks are not legally "famous."

See [51] at 20.

Affirmative defenses 12 and 14 are simply denials of Boat U.S.'s allegations regarding trademark infringement. Accordingly, they are appropriate for Chicago Marine's answer to Boat U.S.'s allegations, but they are not affirmative defenses. See *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 2012 WL 4120440, at *10 (N.D. Ill. Sept. 19, 2012) (striking "affirmative defenses that are more properly characterized as denials of [plaintiff's] allegations"). They do not assert an excuse from some or all liability but rather that Plaintiff will be unable to meet its evidentiary burden. In general, an affirmative defense asserts that, even if the allegations of the complaint are true, additional facts excuse the defendant from some or all liability. See *Green v. Kubota Tractor Corp.,* 2012 WL 1416465, at *1 (N.D. Ill. Apr. 24, 2012)). Therefore, affirmative defenses 12 and 14 are stricken with prejudice.

Regarding affirmative defense 13, good faith can be an affirmative defense in the trademark context—*e.g.*, the fair use defense. See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 639 (7th Cir. 2001). Because Defendant's good-faith defense is conclusory, any attempt to

argue that the pleading as it now stands invokes a good-faith-related defense applicable in the trademark context falls short of the mark. Accordingly, affirmative defense 13 is stricken without prejudice and with leave to amend.

Affirmative defenses 15 and 16 read as follows:

15. Counter-Defendant asserts the defense of abandonment only to the extent that some of the BoatU.S. marks may not have been registered or those registrations were not timely renewed.

16. Counter-Defendant hereby reserves each affirmative defense that may become known or available to him throughout this proceeding.

See [51] at 21.

As for affirmative defense 15, abandonment is a proper affirmative defense in a trademark infringement action. See, *e.g.*, *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1214 (7th Cir. 1997); see also *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1041 (N.D. Ill. 2014) (concluding that abandonment was properly pleaded). However, Boat U.S. correctly points out that affirmative defense 15 does not properly allege abandonment under 15 U.S.C. § 1127. Accordingly, the Court strikes affirmative defense 15 without prejudice and with leave to amend.

Regarding affirmative defense 16, a reservation of rights is not a matter "properly pleaded as an affirmative defense." *Hydra–Stop, Inc. v. Severn Trent Environm'l Servs., Inc.,* 2003 WL 22872137 at *5 (N.D. Ill. Dec. 3, 2003). Furthermore, it is unnecessary to explicitly reserve the right to plead additional affirmative defenses, as "there is no procedure for reserving a right to plead affirmative defenses at a later date." *Dresser Industries, Inc. v. Pyrrhus AG,* 936 F.2d 921, 928 n.6 (7th Cir.1991). Rather, Chicago Marine can move to amend its pleadings to add additional affirmative defenses. See Fed. R. Civ. P. 15.

Taken as a group, this battery of Chicago Marine's affirmative defenses are the kinds of "[t]hreadbare recitals of the elements," *Iqbal,* 556 U.S. at 678, that are insufficient to survive a motion to dismiss under Rule 12(b)(6). See *Heller Fin. Inc.,* 883 F.2d at 1295 (striking affirmative defenses that were "nothing but bare bones conclusory allegations"). Chicago Marine argues that its affirmative defenses are supported by the factual background contained in earlier pleadings, but Chicago Marine fails to connect the relevant facts to the applicable defenses, and "its efforts to do so in its response to Plaintiff's motion to strike cannot serve as its lifeboat." *Sarkis' Cafe, Inc.*, 55 F. Supp. 3d at 1040 (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) (pleadings cannot be amended by a party's brief in opposition to a motion to dismiss)). Chicago Marine "cannot implicitly amend [its pleadings] in [its] response."). *Holub v. Live Nation Entm't, Inc.,* 2013 WL 5290049, at *2 (N.D. Ill. Sept. 18, 2013). To sum up, the Court strikes affirmative defenses 1, 2, 5, 13, 15 without prejudice and strikes affirmative defenses 3, 4, 6, 12, 14, and 16 with prejudice.

**B. Whether Affirmative Defense 4 should be stricken because Count IX of Boat U.S.'s counter-claims has been dismissed**

As discussed above, Chicago Marine moved to dismiss many of Boat U.S.'s counterclaims, all of which the Court denied except Count IX for trademark dilution under the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65, on December 12, 2014. See [46]. Nevertheless, Chicago Marine filed the following affirmative defense:

> 4. Counter-Defendant, pursuant to this Honorable Court's Memorandum Opinion and Order dated 12/12/14 [46], denies all allegations contained in Count IX of the Counterclaim and asserts that Count IX was dismissed for failure to state a claim.

See [51] at 18.

Given that the Court previously dismissed Boat U.S.'s counterclaim alleging trademark dilution, the Court strikes with prejudice Chicago Marine's affirmative defense 4 because it is asserted against an already-dismissed claim and makes for unnecessary clutter in this litigation.

### C. Whether Affirmative Defenses 7–11 should be stricken as constitutional defenses

Plaintiffs assert that Defendant's affirmative defenses 7–11 are not actually affirmative defenses but constitutional defenses that should be stricken without prejudice. Those defenses read as follows:

7. Counter-Defendant avers that any award of damages to Plaintiff in this case will be violative of the constitutional safeguards provided to Defendant under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States in that the determination of damages under 42 U.S.C. § 1981 and 29 U.S.C. § 1001et seq. is vague, is not based upon any objective standards, is standardless, and is not rationally related to legitimate government interests.

8. With respect to Counter-Plaintiff's demand for punitive damages, Counter-Defendant specifically incorporates by reference any and all standards or limitations regarding the determination and/or enforceability of punitive damages awards as articulated in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 121 S. Ct. 1678 (2001); and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 123 S. Ct. 1513 (2003).

9. Counter-Defendant avers that any award of punitive damages to the Counter-Plaintiff in this case will be violative of the procedural safeguards to Counter-Defendant under the Sixth Amendment to the Constitution of the United States in that punitive damages are penal in nature and consequently, Counter-Defendant is entitled to the same procedural safeguards accorded to criminal Defendant.

10. It is violative of the self-incrimination clause of the Fifth Amendment to the Constitution of the United States of America to impose against Counter-Defendant punitive damages, which are penal in nature, yet compel Counter-Defendant to disclose potentially incriminating documents and evidence.

11. To the extent the Complaint can be construed to request or demand an award of punitive damages, Plaintiff's claim of punitive damages violates

>     the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the
>     Constitution of the United States * * * *

See [51] at 19.

Four of these five asserted defenses (7, 9, 10, and 11) are variations on a theme—namely that punitive damages in this case would violate the United States Constitution. In affirmative defense 8, Chicago Marine cites a slew of Supreme Court cases that wrestle with limitations on punitive damages. The Court is unsure what to make of this series of affirmative defenses. "Assertions that punitive damages are not recoverable or constitutional do not constitute affirmative defenses under [Rule] 8(c)" and accordingly fail as a matter of law. *Kiswani v. Phoenix Sec. Agency, Inc.*, 2006 WL 463383, at *5 (N.D. Ill. Feb. 22, 2006). Furthermore, affirmative defense 11 repeats constitutional provisions cited in 7, 9, and 10, and thus is duplicative and unnecessary. As a result, affirmative defenses 7–11 are stricken without prejudice.

## IV. Conclusion

For these reasons, the Court grants without prejudice Boat U.S.'s motion [54] to strike affirmative defenses 1, 2, 5, 7, 8, 9, 10, 11, 13, and 15, and grants with prejudice Boat U.S.'s motion to strike affirmative defenses 3, 4, 6, 12, 14, 16. Chicago Marine is given until 4/29/2016 to replead any affirmative defenses that are dismissed without prejudice.

Dated: March 29, 2016

Robert M. Dow, Jr.
United States District Judge

15