# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN J. MANLEY d/b/a<br>CHICAGO MARINE TOWING, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. 13-cv-5551 |
| v. | )<br>) | Judge Robert M. Dow, Jr. |
| BOAT/U.S., INC., a Virginia corporation,<br>GREAT LAKES REPAIR, INC., d/b/a<br>GREAT LAKES TOWING & REPAIR,<br>a Michigan corporation, and RICHARD N.<br>LENARDSON, an individual and resident<br>of Michigan, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## MEMORANDUM OPINION AND ORDER

On January 3, 2017, the Court granted Defendant Boat U.S., Inc.'s motion for summary judgment as to Plaintiff Chicago Marine's claim for intentional interference with prospective economic advantage and Chicago Marine's claim for defamation *per quod*, and denied Boat U.S.'s motion for summary judgment as to Chicago Marine's claims for breach of contract for wrongful termination (Count I), breach of implied covenant of good faith and fair dealing (Count II), and defamation *per se* (Count IV). [See 77]. Before the Court is Boat U.S.'s motion for reconsideration of parts of the January 3, 2017 opinion pursuant to F.R.C.P. Rule 54(b) [84]. For the reasons that follow, Boat U.S.'s motion [84] is denied. This case is set for further status hearing on November 29, 2017 at 9:00 a.m.

## I. Background

The full background of this case is set forth in the Court's summary judgment opinion, knowledge of which is assumed here. [See 77 at 1–8.] Facts relevant to resolving Boat U.S.'s motion are set forth in the analysis below.

## II. Legal Standard

There has not yet been a final judgment in this case, thus Rule 54(b) governs Boat U.S.'s motion for reconsideration. Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." See *Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id.* (citation and internal quotation marks omitted).

Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Ghashiyah*, 2008 WL 680203, at *3. The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the

record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (citation and internal quotation marks omitted). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id.* (citation and internal quotation marks omitted). Additionally, "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

**III.    Analysis**

Boat U.S. seeks reconsideration of the Court's January 3, 2017 opinion to the extent that it denies Boat U.S.'s motion for summary judgment as to Count I, Count II, and Count IV of Chicago Marine's complaint.

    **A.    Wrongful Termination of Contract (Count I) and Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)**

On July 23, 2012, Boat U.S. terminated its contract with Chicago Marine pursuant to which Chicago Marine was a Boat U.S.-authorized marine towing company. [61-2 ¶¶ 6, 31.] According to the termination letter that it sent, Boat U.S. terminated this agreement because Chicago Marine materially breached it by failing to comply with the law of salvage. [1, Exhibit D, at 1–2.] Specifically, Boat U.S. determined that Manley's actions in connection with Chicago Marine's July 1, 2012 salvage operation assisting distressed boaters Nathan Locher and Laurie Jagla materially violated salvage law because Manley both refused to tell Locher the location of

3

his boat and also refused to immediately allow Locher access to his boat. [*Id.*] Before terminating the Chicago Marine contract, Boat U.S. conducted a thorough investigation of Chicago Marine's handling of the July 1, 2012 salvage operation. [61-2 ¶ 30.] Boat U.S. decided to terminate the contract based on this investigation. [*Id.* ¶ 31.] Chicago Marine subsequently brought claims against Boat U.S. for breach of contract for wrongful termination (Count I) and breach of implied covenant of good faith and fair dealing (Count II). Boat U.S. filed a motion for summary judgment on both of these claims.

Whether this termination breached the parties' contract depends on whether Chicago Marine violated salvage law in connection with the July 1, 2012 salvage operation at issue. Salvage law concerns the compensation awarded to those who voluntarily render assistance to vessels in peril at sea. *The Sabine*, 101 U.S. 384, 384 (1879). The law of salvage compensates potential salvors in order to incentivize their efforts to save these vessels. *Id.*; see also *R.M.S. Titanic, Inc. v. The Wrecked & Abandoned Vessel*, 435 F.3d 521, 531 (4th Cir. 2006) ("Without some promise of remuneration, salvors might understandably be reluctant to undertake the often dangerous and costly efforts necessary to provide others with assistance."). In order to secure this compensation, salvage law gives salvors a maritime possessory lien on the salved property. *R.M.S. Titanic*, 435 F.3d at 531; *The Snow Maiden*, 159 F. Supp. 30, 32 (D. Mass. 1958). This lien attaches "to the exclusion of all others, including the property's true owner," but it does not divest the true owner of title to the salved property. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 963 (4th Cir. 1999); see also *R.M.S. Titanic*, 435 F.3d at 531. Furthermore, salvors in possession of a salved vessel have "duties of good faith, honesty, and diligence in protecting the property" in their care. *Haver*, 171 F.3d at 964.

In its summary judgment opinion, this Court held that summary judgment on Counts I and II was not warranted because a reasonable jury could conclude that Chicago Marine did not breach salvage law and that Boat U.S.'s early termination of the contract was thus not permitted. [77 at 15.] The Court found that there was a genuine dispute of material fact as to Locher's and Jagla's mental states on the night of the July 1, 2012 salvage operation, such that a reasonable jury adopting Manley's assessment of their mental states as drunk or otherwise impaired could conclude that Chicago Marine properly retained possession of the salved vessel to prevent Locher and Jagla from damaging it. [*Id.*]

Boat U.S. seeks reconsideration of the Court's order on Count I for two reasons. First, Boat U.S. argues that the Court misunderstood its arguments. Boat U.S. claims that it was not disputing Manley's right to retain possession of the salved boat, but instead it was arguing that Manley's concealment of the boat's location and refusal to allow Locher and Jagla access to the boat clearly violated salvage law. [84-1 at 4.] The Court acknowledged this argument, stating that "Boat U.S. contends that it was a violation of salvage law for Chicago Marine to take Locher's vessel to an undisclosed location and to deny Locher and Jagla access to their property." [77 at 14.] Thus, there was no misapprehenshion of Boat U.S.'s argument on this point. Boat U.S. further argues that the Court's reference to Manley's duty to protect the boat was irrelevant because there is no evidence that Locher and Jagla had damaged their boat or would do so if given access, and that Manley never expressed any concern about the potential for such damage. [84-1 at 4.] But the Court cited evidence from Manley's deposition specifically addressing that concern. Manley asserted that Locher and Jagla would "[a]bsolutely not" have been competent to operate a motor vehicle in their impaired state, which led to his decisions on the night of the salvage operation. [77 at 15], citing [61-3, Exhibit 2 (Manley Deposition), at

70.] The Court must construe this evidence in the light most favorable to Chicago Marine, as the non-moving party, on a motion for summary judgment. See *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). A reasonable jury crediting Manley's assessment of events at the time of the July 1, 2012 salvage operation could find that Locher and Jagla were in a position to damage the boat further, and that Chicago Marine therefore properly kept exclusive possession of the boat at that time. Boat U.S. does not cite to any information that the Court failed to consider on this point that might render the Court's decision a "manifest error." *Oto*, 224 F.3d at 606.

Second, Boat U.S. argues that an owner's right to have access to his boat and his property to inspect and preserve it is controlling precedent in salvage law that the Court previously failed to consider. [84-1 at 4–5.] Boat U.S. does not cite to a particular case to support this in its opening brief, but in its reply it identifies the precedent to which it refers as *The Alcazar*, 227 F. 633 (E.D.N.C. 1915). [86 at 2–3.] In *The Alcazar*, an employee of the salvor refused to permit an employee of the vessel's owner onto the vessel while salvage operations were ongoing. *Id.* at 641. The court held that, while "[t]here seems to be no hard and fast rule prescribing the relative right and duty of the owner and the salvor in regard to the time of, or condition upon which, exclusive possession may be held by the salvor," the refusal to permit the owner onto the vessel was unjustified under the circumstances. *Id.* at 656, 657.

Boat U.S.'s argument fails for several reasons. First, Boat U.S. argues in its reply that *The Alcazar* is the "correct[]" and "controlling" precedent that the Court failed to recognize, [86 at 2], but Boat U.S. has already raised this case as a basis for its motion for summary judgment. [See 61-1 at 6.] The Court cited to and considered the case in its opinion on this motion. [See 77 at 14]. The mere repetition of Boat U.S.'s contention that *The Alcazar* is controlling precedent that conclusively demonstrates Chicago Marine's violation of salvage law is not

persuasive on a motion for reconsideration. See *Moore-Fosto v. Bd. of Educ. of City of Chi.*, 2017 WL 1833152, at *4 (N.D. Ill. May 8, 2017); see also *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.").

Second, even considering the merits of *The Alcazar* as applied to this case, the Court does not believe that its opinion represents a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606. *The Alcazar* does not stand for the proposition that any refusal to provide the owner of a salved vessel with access to that vessel is a violation of salvage law. Instead, as described above, the *The Alcazar* holds that in the circumstances of the case at issue the salvor acted unreasonably, and it further holds that [t]he right to demand possession by the owner, and to retain it by the salvor, will * * * be measured by the necessity for preserving the rights of both parties." *The Alcazar*, 227 F. at 656. As the Court noted, a reasonable jury could find that it was reasonable in these circumstances for Manley to exclude Locher and Jagla from the salved vessel on July 1, 2012 in order to preserve both his lien and Locher's title, and therefore Boat U.S.'s early termination of the contract with Chicago Marine was not warranted. See *The Hyderabad*, 11 F. 749, 757 (E.D. Wis. 1882) ("[I]t is not permissible * * * for the salvors to *unreasonably* exclude the master and crew of the wrecked vessel from all relation to and interest in the property.") (emphasis added); *The Snow Maiden*, 159 F. Supp. at 33 (finding that salvor who recovered parts of wrecked vessel was not required to immediately surrender those parts to the owner "so long as he recognized the paramount claim of the owner" and filed a salvage action within a "reasonable time"). See also 3A Benedict on Admiralty § 153 (2017) (after the vessel has been brought to a place of safety, "[a]ny *untoward*

action to exclude the owner or his representatives to visit the property for inspection or similar purposes could be regarded as misconduct on the salvor's part") (emphasis added).

Because the Court finds there is no misunderstanding of Boat U.S.'s arguments or failure to recognize controlling precedent, Boat U.S.'s motion to reconsider its denial of summary judgment on Count I is denied.

Regarding Count II, Boat U.S. argues first that Chicago Marine's claim for breach of implied covenant of good faith and fair dealing "walks hand in hand" with Count I and therefore if reconsideration is granted for Count I it should also be granted for Count II. As explained above, reconsideration is denied as to Count I. Boat U.S. also argues that even if the contract's termination was not expressly permitted by the parties' agreement, there is no evidence to support Chicago Marine's allegation that Boat U.S. exercised discretion granted by the contract in an arbitrary, capricious, and unreasonable manner. [84-1 at 5.] But Boat U.S. already made this argument in its motion for summary judgment. [See 61-1 at 9–10]. The Court rejected it by holding that a reasonable jury could find that Chicago Marine did not breach salvage law, and thus the early termination of the agreement was an arbitrary exercise of discretion. [See 77 at 15.] A motion for reconsideration should not be used to raise arguments that have previously been raised before the Court. See *Caraker v. Sandoz Pharm. Corp.*, 172 F. Supp. 2d 1018, 1027 (S.D. Ill. 2001) (explaining that simply rehashing a previously rejected argument "is exactly what *not* to do in a motion to reconsider"); *Fisher v. Samuels*, 691 F. Supp. 63, 74 (N.D. Ill. 1988) (explaining that it is inappropriate to use a motion for reconsideration to advance an argument that the court has already rejected). Boat U.S. has not presented any new or previously overlooked evidence to support its argument here. Therefore, Boat U.S.'s motion for reconsideration as to Count II is denied.

B.     Count IV: Defamation *Per Se*

On January 13, 2013, Richard Lenardson (as a representative of Boat U.S.) allegedly made several comments to Keith Pearson (who had worked for Chicago Marine as a subcontractor) at the Chicago Boat Show. [61-2 ¶¶ 35, 37.] Pearson testified that, after telling Lenardson that he worked for Chicago Marine, Lenardson said that Chicago Marine was "out of business" and that Manley "lost his license," which Pearson assumed referred to his captain's license. [61-3, Exhibit 4 (Pearson Deposition), at 23, 25.] Pearson testified that other people overheard these statements, including Peter Thompson (another Boat U.S. representative), two Boat U.S. marketing representatives, and Pearson's son. [*Id.* at 32–33.] Pearson also testified that he did not believe these statements and that they did not affect his opinion of Chicago Marine. [61-2 ¶ 37.] Chicago Marine brought claims against Boat U.S. for defamation *per se* (Count IV) and defamation *per quod* based on the alleged falsity of these statements, and Boat U.S. moved for summary judgment.

Chicago Marine's defamation claims are governed by Illinois law. [See 77 at 16.] Under Illinois law, a defamatory statement is one that "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community." *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). To prevail on a defamation claim, a plaintiff must demonstrate (1) the defendant made a false statement about plaintiff; (2) the statement was published to a third party; and (3) the publication caused damage to the plaintiff. *DePinto v. Sherwin-Williams Co.*, 776 F. Supp. 2d 796, 803 (N.D. Ill. 2011). Statements can be defamatory *per se* or *per quod*. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). A statement is defamatory *per se* if "its defamatory character is obvious and apparent on its face," and in that case damages are presumed without the plaintiff needing to plead and prove them. *Id.*; see also *Madison v.*

*Frazier*, 539 F.3d 646, 653 (7th Cir. 2008) (applying Illinois law). A statement that is not defamatory *per se* may be defamatory *per quod*, and in that case a plaintiff will need to plead and prove actual pecuniary damages in order to recover. *Tuite*, 866 N.E.2d at 121; *Bryson*, 672 N.E.2d at 1214.

The Court concluded that Boat U.S. was entitled to summary judgment on Chicago Marine's claim for defamation *per quod* because Chicago Marine did not produce any evidence to support its claim of special damages from Lenardson's alleged statements.[1] [77 at 20.] The Court denied summary judgment on Chicago Marine's claim for defamation *per se*, however. The Court found that Chicago Marine did not need to provide evidence of damage in order to recover on a defamation *per se* claim, and that Boat U.S. failed to rebut a presumption of damages on this claim because Pearson testified that others overheard Lenardson making the alleged statements. [*Id.* at 21–22.]

Boat U.S. argues that the Court should reconsider its denial of summary judgment on Count IV's defamation *per se* claim because Pearson's statement that others may have overheard the allegedly defamatory statements is "pure speculation" without corroborating evidence, and therefore it has rebutted defamation *per se*'s presumption of damages. [84-1 at 5–6.] Boat U.S. claims that the Court's determination to the contrary is a manifest error of law or fact that warrants reconsideration.

Boat U.S.'s argument fails. Chicago Marine does not need to plead or prove actual damages to its reputation in order to recover for defamation *per se*. See *Huon v. Denton*, 841 F.3d 733, 738 (7th Cir. 2016); *Madison*, 539 F.3d at 653; *Tuite*, 866 N.E.2d at 121; *Van Horne v. Muller*, 705 N.E.2d 898, 903 (Ill. 1998); *Bryson*, 672 N.E.2d at 1214; *Swick v. Liautaud*, 662

---

[1] For purposes of Boat U.S.'s summary judgment motion, the Court assumed that Lenardson did make these statements. [See 77 at 19.]

N.E.2d 1238, 1245 (Ill. 1996); *Owen v. Carr*, 497 N.E.2d 1145, 1147 (Ill. 1986); *Fried v. Jacobson*, 457 N.E.2d 392, 394 (Ill. 1983). Boat U.S. acknowledged this in its motion for summary judgment. [See 61-1 at 14.] Moreover, Illinois law does not clearly state that the presumption of damages in defamation *per se* cases is rebuttable. Boat U.S. cites to *Knight v. Chicago Tribune Company*, 895 N.E.2d 1007 (Ill. App. Ct. 2008), in its reply to support its contention that this presumption is a rebuttable one. In *Knight*, the Illinois Appellate Court explicitly declined to rule on whether the presumption of damages for defamation *per se* is rebuttable, though, and the Illinois Supreme Court has not conclusively resolved the issue. See *Knight*, 895 N.E.2d at 1014–15; see also *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, 2017 WL 1105400, at *10–11 (N.D. Ill. Mar. 24, 2017) (rejecting defendant's argument, based on *Knight*, that successful rebuttal of presumption of damages in action for defamation *per se* precluded plaintiff from recovering as a matter of law).

Furthermore, even assuming, as the Court did, that the presumption of damages for defamation *per se* is rebuttable, Boat U.S. has presented no new or overlooked evidence in its motion for reconsideration that it has in fact rebutted the presumption of damages. Boat U.S. rests its argument that the presumption has been rebutted on the fact that Pearson's statement is "pure speculation" that does not constitute proof of publication to a third party, and there is "no evidence" in the record that the alleged statements were overheard by anyone else. [84-1 at 6.] But Pearson states in his deposition testimony that specific individuals at the Chicago Boat Show "[a]bsolutely" overheard Lenardson's allegedly false statements. [61-3, Exhibit 4 (Pearson Deposition), at 32, 33]. A reasonable jury could accept this evidence and conclude that Chicago Marine's reputation was damaged in the eyes of these other named individuals. See *Sunny Handicraft*, 2017 WL 1105400, at *11 (finding that where affiant stated her negative actions

11

towards plaintiff were not based on allegedly defamatory e-mails, defendant still had not rebutted presumption of damages in a defamation *per se* action because "a reasonable jury crediting the evidence * * * could still conclude that the e-mails lowered Plaintiffs' reputations in the eyes of other[s] * * * who received the subject e-mails"). While Boat U.S. attacks this testimony as "pure speculation," the Court cannot invade the province of the jury by assessing the credibility of Pearson's testimony. See *Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.*, 102 F.3d 914, 918 (7th Cir. 1996) (witness's affidavit stating it was based on personal knowledge created a genuine dispute of material fact that precluded summary judgment, despite defendant's argument that affiant could not have personal knowledge of some of those factual matters, because the affiant's "credibility is a determination to be made by a finder of fact, not on summary judgment"). Boat U.S. does not point to any reason why this decision was a manifest error of law and fact, and Boat U.S.'s motion for reconsideration on the defamation *per se* claim is therefore denied.

Boat U.S. also argues that Pearson's "pure speculation" that undisclosed persons may have overheard the alleged statements at the Chicago Boat Show does not constitute reasonable or sufficient proof of publication to a third party. [84-1 at 5.] This appears to be an argument that summary judgment is appropriate on the defamation *per se* claim because no reasonable jury could find that the allegedly defamatory statements made by Lenardson were published to a third party, and in that case the second element of a defamation claim would not be supported by evidence. *DePinto*, 776 F. Supp. 2d at 803. In its motion for summary judgment, though, Boat U.S. only challenged Chicago Marine's evidence of damages, not its evidence of publication. [See 61-1 at 14–15] ("[E]ven if Lenardson made the false statements alleged * * *, even if he made them as Boat U.S.'s agent, and even if making them to Mr. Pearson * * * constituted

12

publication to a third-party, Plaintiff is nevertheless unable to produce evidence to support his allegation that he sustained loss to his reputation or business as a result."). Motions for reconsideration should not be used to advance arguments that should have been made to the Court in the first instance. *Miller*, 683 F.3d at 813; see also *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to * * * tender new legal theories."). Therefore, to the extent that Boat U.S. is arguing for the first time that summary judgment should be granted on the defamation *per se* claim because there is not sufficient evidence to support publication to a third party, Boat U.S.'s motion for reconsideration is denied.

## IV. Conclusion

For the reasons explained above, Boat U.S.'s motion is denied. This case is set for further status hearing on November 29, 2017 at 9:00 a.m.

Dated: November 9, 2017

Robert M. Dow, Jr.
United States District Judge